Thank you. I think you'll be seeing quite a bit of me here today. My name is David Ness again. I'm with the Federal Defender's Office and I represent Mr. Stoddard. This case, of course, has two issues, both of them being guideline issues, one having to do with a firearm enhancement and the other having to do with an enhancement for essentially an environmental, unlawful release into the environment or unlawful storage of hazardous materials. I'd like to start with the gun enhancement first. The thing in evaluating this, I think, that really needs to be kept in mind is that there was no dispute whatsoever that Mr. Stoddard was not around when the methamphetamine activity occurred in his garage. He was 150 miles away, both in his guilty plea and all of the evidence suggested that he was up working and had lent his garage to an acquaintance or a friend. The friend then went in and used the garage to engage in the methamphetamine manufacturing activity. So I think where that puts this is not only would the government have to show somehow that Mr. Stoddard knowingly possessed the guns, that Mr. Stoddard knowingly used the guns, but backing up further that the friend, the person in the garage, used or possessed the firearms that were in the closet and there was simply no evidence of that. The guideline requires proof. Was there some evidence that they were visible? Well, two things about that. I would say no. One thing is that it's unclear if the guns were even visible. The police officer testified that when he walked into the garage, he could look into the closet and see that the guns were visible. But he didn't know whether the closet door had been opened before he went into the garage or if the closet door had been closed. And in addition, the methamphetamine activity occurred some days prior to the raid on the garage, and there was no indication that the closet door was open then or even that the friend saw him. What finding did the district court make on that point? Did it find that the guns were visible or not? The district court, as I recall, said the guns were there and they were visible. That's readily available. Excuse me? Readily available. Readily available and visible. So why is that clearly erroneous? Well, I don't think that there was any evidence to support the fact that the guns were clearly visible. I mean, certainly to the friend. And remember, this person that went in to use the garage, I wasn't trial counsel, but as I understand it was the government informant that was presumably available, that presumably could have been called to say, yes, I knew that the guns were there. So there was, whether or not the guns were visible on the day of the raid, there was no evidence to support the conclusion that the guns were visible the week before, whenever the drugs were in fact manufactured. But couldn't that be a reasonable inference? I mean, wasn't the judge entitled to credit the testimony of the officer that they were visible and readily available and make an inference from that, that they were readily available when the friend was there? I don't think it is because of the testimony. The officer testified, I went in, I could see the guns when I went in. Then the questioning was, was the door open? Was the door closed before then? And he said, I don't know. There were other, I'm sorry. Now I was going to say, didn't the defendant say that the gun was there and he forgot and was going to have somebody remove the gun? So could the judge also credit that as evidence that the gun was probably there the week before? Oh, I think the guns were probably there. I don't, I wouldn't, I'm certainly not going that far. I think that the guns were there the week before. I think that's, the testimony was is that Mr. Stoddard asked his neighbors to move the guns sometime before. The neighbor who, and the court essentially said he credited the neighbor's testimony. And the neighbor's testimony was is that I meant to go do that, but my father got really sick. I just forgot to do it and I didn't do it. How is the judge's ruling clearly erroneous with all of that testimony? On what point then was the judge's ruling clearly erroneous? There's no evidence to support the judge's. I mean, and I guess it's also unclear what exactly the judge is talking about. The judge says that the guns were visible, but the only evidence about when the guns were visible was when the police officer walked in that day of the raid. There was no evidence presented that the guns were visible, say, before the police officer walked into the garage. Because remember, other police officers were in there. Other police officers had been in there and they were doing the investigation. They were gathering evidence. And the police officer who testified that they were visible said, I don't know if that closet door was open or not before I went in there. All I can say is that it was open when I went in there. So is it your argument that if a gun is behind a closed closet door rather than an open closet door, it's not, the firearm enhancement does not apply? No, not usually, no. No, not usually what? Well, I would say, but you have to back up a step. Remember, the guideline says, penalizes, in essence, use or possession of a firearm. To use or possess a firearm in connection with another felony offense, I think at the very least you have to show that the defendant or, in this case, the other person, knew that the guns were there. Possession or use requires some sort of, there's a knowingness element. You can't legally possess something without knowing that it's there, knowing that it's within your possession. So in the circumstance, certainly, where a defendant is manufacturing methamphetamine, he has a gun in the closet and the door is closed and he knows it's there, yes, no problem there. But not if the defendant doesn't know that it's there or if the person, in this case, manufacturing, doesn't know it's there. There has to be some showing that they knew that the gun was there. But didn't he plead in his plea? Didn't he? Didn't he, in connection with his plea, admit to knowing possession of a gun? Yes. During that period of time, May 30th of 2007? No, Your Honor, take a look at his plea colloquy. He said in there, I asked my neighbor to take these things. He didn't admit that I knew within this period of time that the guns were in there. He admitted that at some point, essentially, when he was on probation, when he was a convicted felon, he possessed these guns and that he didn't get rid of them when he should have. But again, even assuming that he knew they were in there, if he's not there and if there's no evidence that his friend knew that they were there, I don't understand how they could have a potentially emboldening effect upon the friend. You know, and that's the problem with the gun enhancement is there. There's too many holes to fall into here, I think, for the government with its reasoning, because there was evidence that was credited by the judge that the neighbor had been asked to remove the weapons and hadn't removed the weapons. The defendant admitted to being a felon in possession, but there was, I believe, that the plea happened before the magistrate. There was even a question at some point of, should I accept this plea or not? And the magistrate ended up accepting it. It was the judge who accepted the plea. It was the magistrate who took it. Sure. Right. But the judge accepted the plea. But then there was no evidence that the person who actually manufactured the methamphetamine knew that the gun was there. So I just don't see how there was a knowing user possession or how it could have on the state of that record. There could be a finding that these guns had a bolting effect on the drug activity. Down to 13 seconds. I guess I'll just say very briefly, the government puts forth an argument regarding the environmental violations. Those arguments were never presented to the district court. The evidence just didn't show that there was a environmental violation. And so did the evidence have to show an environmental violation, a violation of EPA or some environmental laws, state laws? It did. If you read the guideline and under the holdings of this court, as well as other circuits, in order to get that two-point enhancement, they have to show that the defendant's conduct involved a violation of RICRA, CERCLA, and the Federal Water Pollution Control Act. Well, didn't the district court make a finding that there was a release of harmful chemical into the environment? And isn't that enough or a precursor? One of the precursors was restricted or prohibited material under the environmental status. Didn't the district court make that finding? No, I don't believe that the district court did, Judge Rollins. What did the district court say about what was released into the environment? Well, the district court said that there was iodine-soaked rags in the garbage can. There were some matcher striker plates and then went on to say that the hazmat people had to come in to clean the mess up. Now, as the government acknowledges in its brief, iodine isn't a listed hazardous substance under RICRA. There was no phosphorus found. And there was really no discussion whatsoever by the parties either. What about the testimony of John Stevens? And he testified that they didn't find any phosphorus. Well, didn't he say that the presence of iodine and red phosphorus would have reacted to generate and release highly toxic phosphine gases? He said, but that assumes, A, that, and I'll acknowledge, maybe that's not such an unreasonable assumption that the red phosphorus and iodine was mixed there, but he didn't find any iodine. And there was no proof of that, certainly. He confirmed the presence of iodine and said that there were traces of red phosphorus. But maybe the government will enlighten us. And I guess the only other thing I'd say on that is, is if you go back to the canard case in those cases, if you impose it based upon that, then this environmental enhancement will be applied to every single methamphetamine case, manufacturing case, and I don't think that that's what the sentencing commission intended. Thank you. May it please the court, ladies and gentlemen, my name is Carl Rossett. I'm with the U.S. Attorney's Office out of Great Falls, and I was the prosecutor in the Stoddard case, so I have that advantage over Mr. Ness. If I might turn my attention first to the issue of the discharge of a hazardous material. In a red phosphorus methamphetamine cook, especially when you're taking striker plates as the source of your phosphorus, once you've harvested the phosphorus off the striker plates, you either put it into the methamphetamine for the production, and that will create phosphine gas, and that's a discharge, or even if you assume that they just soaked the phosphorus off the match plates and didn't do it, you still have phosphorus somewhere, going somewhere, being discarded without permit, and that's where the striker plates were in the garbage. It's pretty clear that there was a methamphetamine production, which would have then left phosphine gas, and that's what the judge found. That's what Sgt. Stevens testified to. But he said that if he had detected the presence of phosphine gas, he would be dead, right? Right. Your Honor, if you might recall, this lab was no longer active, so we're dealing with what it had done, not what it was doing at the time. Right, but if it was released, then wouldn't it have harmed the people who released it? No. Well, it's very dangerous to the meth cooks themselves, but it dissipates rather quickly into the atmosphere. So they would have had to have on masks or something of that nature? Often they don't, but the phosphine gas is very deadly, and that's why a lot of methamphetamine cooks don't survive the process. But I don't know what precautions Mr. Stoddard would have taken in the production of the methamphetamine. I took some exception to what Mr. Ness says about the friend doing it, that it's uncontroverted, the friend did it. That's not the record at all. The informant said Mr. Stoddard was operating a meth lab in his garage in Belt, and admittedly, the informant was the person that got him the striker plates, because he worked at a hotel supply house where they had lots of meth cooks, and that's how the informant knew that that's what he was up to, plus his association with Mr. Stoddard. So it's our position that there really isn't any question from this record that it was actually Mr. Stoddard's lab. Admittedly, he was arrested, again, keeping in mind that the lab was no longer active by the time it was discovered. Some quite a bit distance away, but that certainly doesn't suggest that he wasn't the person operating the lab. And they were his guns, and they were within reach. Whether or not they were in a closed closet or open closet, they were within reach and loaded. I mean, Mr. Ness doesn't, you know, tend to get that either. And the shotgun had an obliterated serial number. One of the guns was loaded. One, yes, sir. The shotgun was not loaded. Anyway, Your Honor, I don't know if the court has any questions, but our position is fairly clear that the guns were within reach. It's a small garage. Certainly, the enhancement under the standard that is applied in sentencing, we're not asking that Mr. Stoddard be guilty of a 924C violation beyond a reasonable doubt. All we are saying is that the court lodged it. So is the argument based simply on the proximity of the guns? It is, Your Honor. That's it? Yes. Proximity to a methamphetamine lab. Well, you have to show a little bit more under, was it 2K2? I don't believe so, Your Honor. I think that's a sufficient circumstance. You can store your firearms anywhere. If they'd been in the house, it wouldn't have applied. If they'd been in his pickup truck, it wouldn't have applied. But that's not where they were stored. They were stored within arms reach. You have to show that he possessed them in connection with. Right, and the circumstances is that they are. But you don't have to necessarily further it. Just that, you know, it emboldened. Protect. Right. Protect both the lab and the participants of the lab. Readily available. Yes, sir. And again, going to the point, it would not have been applied if the guns had been anywhere else but within arms reach of the methamphetamine lab. If you mix phosphorus, iodine, what do you get? Nothing. Oh, phosphorus and iodine, you get the phosphine gas, Judge. And I do think that the commission probably does mean for that enhancement to apply to every methamphetamine operation that uses this process. Why do you say that? Because red phosphorus is a listed chemical. And to harvest it, you're going to be releasing it into the environment, either through the production, which creates the phosphine gas, which is covered, or in disposal of the red phosphorus in any other way. And unless you can show that you have a permit or it was disposed of in accordance with the law, then once you go into the methamphetamine business, at least with the red phosphorus cook method, you're going to be asking for that enhancement. We're going to be violating the environmental laws. I don't think that's usually primary on the methamphetamine cook's mind, Judge, but you're right. Thank you, Your Honor. Well, OK, that's fine. Thank you. Case is submitted at this time. Let's see our next case for argument on this morning's calendar is United States versus Hewitt.
judges: Paez, Rawlinson, Jenkins